My name is Jim Cannon. I am the attorney for the Associations of Mexican and Venezuelan Fishermen, the Tuna Fleet, which seeks to intervene in this appeal. The appeal was brought by Earth Island Institute and a group of animal rights activists. They are contesting a decision by the Department of Commerce. That decision allowed the Mexican and Venezuelan tuna fleets to mark their tuna with a dolphin-safe label. The cans. The cans. Yes, Your Honor. And we're, to be clear, we're just here on the intervention. Yes, Your Honor. We have dismissed all the other aspects of this appeal. We are purely on the question of intervention. Tell us why the district court should have allowed your clients to intervene. I'd essentially like to address two of the points. The first, that there is a significantly protestable interest here. And secondly, that the Commerce Department would not adequately represent the Venezuelan. I'm sorry. Yeah, if you don't mind addressing those in reverse order, I at least am. Speaking only for myself, I am more skeptical of that point than of the protectable interest point. Now that there's an adjudication, why isn't the government adequately representing the correctness of that decision? First, I would point out that there are essentially three factors, whether the government would undoubtedly make all the arguments, whether the government's capable and willing to make the arguments, and whether there's any aspect of the arguments that might be neglected. And with regard to whether they would undoubtedly make all the same arguments, we have presented to this Court, which is now dismissed, but which will be certainly able to be raised on the merits, the question of jurisdiction. The Commerce Department did not raise that issue. Secondly, the Commerce Department, in this case, consented to a stay right at the outset. So right at the commencement of this case... But that's no longer at issue, is it? No, but it certainly shows the willingness to make arguments. You're seeking to intervene now, right? Yes, Your Honor. So don't we have to look at what arguments, what legitimate arguments are available at this stage of the proceedings to determine whether they're going to make the arguments that are to your benefit, not what they did or didn't do a year ago or two years ago? I take your point, but part of identifying what arguments they're likely to make is the history of the case and what have they done to date. And they didn't certainly defend my client's interests in terms of getting speedy relief here or in terms of fighting against the stay. In fact, they consented to it. But probably at this stage, most important is that if you look at the decision that Commerce made, it's in tab one of all the thick binders. They, at several points in that decision, essentially discount the views of the IATTC. That is the body of the IATTC. That is the body that administers the treaty. That is the ---- But isn't the IATTC an amicus in this case? They were an amicus below. I expect they will file or ask to be an amicus in the merits panel. But that's not the same as being a party or an intervener. Was the grant of amicus status limited to the injunction? Was it limited to the injunction? The answer is no, isn't it? No, it was not. They participated on the merits. And what are both of your clients members of the IATTC? They, both of my clients, are the actual industry who are regulated by the IATTC. And so they actually are the fishermen whose boats are out there catching tuna. The IATTC puts the observers on our boats. We have to submit our data to the IATTC. And they, indeed, those data are the grist. That's the data that the scientists use to decide is this going to be dolphin safe or not. Any impediment to your clients seeking amicus status? No, we likely could seek amicus status. But I think it's important for us to be parties. And it's actually important for the Ninth Circuit in that there are quite a few cases on intervention. This seems to be a somewhat cloudy area. I mean, I was frankly surprised. You're asking for intervention as of right, which is a pretty high standard. Yes, Your Honor. We are. No, I don't read it that way as a pretty high standard. In fact, the case law states that it's to be liberally granted if we have the significantly protectable interest and if no one else is going to adequately assert our issues. Let's go back to the history just for a second that you mentioned. At the time that a stay was being discussed, if you had been in amicus, you could have argued against a stay and asserted the impact that would have on your client, right? We would have been able to make arguments regarding the law, probably. But I don't think that was the case. And had he allowed us in at that stage, you know, frankly, he did let us in an oral argument at the court present arguments opposing the preliminary injunction. And we submitted evidence. We submitted a survey of consumers to see what they thought about the Dolphin Safe Standard. But he ultimately rejected all of that. He denied our motion and excluded all of that from the record. But your status then was proposed? Our status was different, in particular because of discovery. Because what later happens in the case is that Earth Island and the animal rights groups do a pretty extensive amount of discovery. They challenge the claims of privilege. They even argue that new data should be added and new documents should be added. And so we did not participate in any of that. And yet below at the agency level, where we were submitting comments, my president was And so we have quite a great knowledge of this file, which it's three CDs. If you were to print it out, it fills the table. And so in the sense of was the record complete and why would we want to be an intervener, as an intervener we would have a much more active role in a case than an amicus. The amicus, without leave, don't present oral argument. So we sought intervener status. IATTC sought amicus status. And they argued legal issues. We certainly wanted to participate. And in fact, the equities of it, when you really boil it down, here are the very industry members who want to use this label. And they have participated in an agency process that's been going on for five years. And in fact, before that in a legislative process attempting to lobby the Congress. And so they have a great stake in this. They win. The Commerce Department decides you have done it. You have succeeded in reducing Dothan mortalities to the level you can use this label. So when there is a lawsuit that pulls that right away from them, they're unable to participate. So simply from an equitable standpoint, imagine how they feel about this. Now, had the decision been negative, wouldn't they have had a right, an aggrievement, and been able to appeal on their own? So I think the purpose here of efficiency and of recognizing the rights of the parties is really served by allowing intervention. Because whether or not you want to call it a right, a right to use a label, or an obligation, if we use the label now, the Federal Trade Administration, however you want to characterize it, we have an interest. And I think that's why the case law uses the word significantly protectable legal interest. Because it doesn't have to be a statutory right. And to touch on the first part or the first test, that interest is very clearly and squarely in the statute itself, in the language of the statute, in the purpose, and in the findings are references to the purpose of this law was to be, you might say, an incentive. Congress recognized that the U.S. market is a magnet for canned tuna sales. It's expressed very factually in Carlos Hussong's affidavit, prices are higher here. And so the law attempts to use that market, that magnet, as leverage so that the U.S. market will participate in the program to protect dolphins. So we did participate. We did exactly what the law intended. And now, essentially the trial court and Earth Island take the position that the law is only intended to protect dolphins, and they ignore the other aspect of the law, which is the means of protection. It's intended to protect dolphins how? By creating a motivation to comply with the program. But doesn't Mr. Hussong quite clearly say that as a matter of self-interest, the fishermen would adopt these procedures as a matter of keeping the ecosystem in balance, not harvesting too many dolphins so that the tuna wouldn't come back? Doesn't he flat out say in his declaration? He does. He does. Indeed, he does. Regardless of the legal aspect, that's what they do. But I don't think that changes, it doesn't change the point that the statute was created to help induce this behavior. And here we have the fishermen who are behaving in this way, and so they want the reward. They want to be able to use the label. And indeed, the Secretary finds you can use the label. Now, because of the lower court's decision, were they to continue using this label on their cans, there is a statutory provision they could be brought before the FTC under 5 U.S.C. section 45 for false misleading advertisement. I think we've got your argument. You've got about four minutes. You want to save it for rebuttal? Could I – I would like to save maybe three for rebuttal. You're free to use your time any way you wish. But I was thinking about Your Honor's concern about would we actually have all the same arguments. And I pointed out that they discounted IATTC's arguments and that we would treat those differently. Is it really required for adequacy of representation that they would make the identical arguments every single thing that you want? Or do they have to be zealously representing the side of the case that you are wanting to win? I think an administrative agency by the APA is going to be bound in by the case law. Well, I'm asking – They have to defend their decision. In other words, their reasons are in this Federal Register You also want to defend their decision. I guess my question is more theoretical. In order to demonstrate that there's inadequate representation of your viewpoint, is it required that the party allegedly representing your interest be willing to make every single one of your arguments? Or do our cases say that it's enough if they will be zealously representing the bottom line? Actually, I think your cases look at it from the other direction. Because your cases say if the government – if the private party's interest is narrower than the government interest and the government interest is broader, then that's a sufficient difference to allow us to intervene. The cases also talk about is the private party the constituent of the government? I think the Southwest case uses the word constituency. But we were not the constituents of the U.S. Department of Commerce. We were foreign fishing flea. Well, whether you were or you weren't, you and the government both want the existing decision to be upheld. And that's true in every – The issue in the case now is – the only issue that's in the case now is whether that decision is okay or not okay. That's the only issue in the case. So with respect to that issue, I guess I still don't see why – You have to review the agency decision for substantial evidence, for arbitrary comprehensives. So if that were true, there would be no intervention on the side of the government in any case. Because the ultimate – It depends on when it is in the litigation. There's already a final judgment here. Okay. I take that point. But I do believe, though, that ultimately all of these administrative law cases involve a situation in which the private parties who want to intervene on the side of the government are always interested in the same ultimate result. And so the standard will they adequately or zealously or will they – will the government neglect an issue and so forth. Those are drawn – well, in the Arikake case, the Hawaiian case, the court is not going to neglect an issue. The question is whether the party would be substantially affected in a practical sense. So those rules, I think, are drawn in a practical sense. Practical – we have a huge record. Another set of eyes helping to go through the record and point out to the court where the error is isn't going to hurt. Thank you. Okay. You have about half a minute for rebuttal, if you'd like. Counsel? Thank you, Your Honor. Richard Mooney for Earth Island Institute and the related appellate. Speak right up. All right. I'll try to speak better, Your Honor. Thank you. Following Judge Graber's lead, I, too, am most interested in the question of the adequacy of representation. We have litigated against the government very vigorously for a long time on this case. The government zealously represented the interests of upholding the Secretary of Commerce's decision. The government has appealed the adverse decision. And the government, as far as we know, is going to continue to prosecute their side of the case very vigorously. And the tactical questions, specific question Your Honor asked, are addressed in the Southern California Edison case, among others, that – and it says that a mere difference in litigation strategy does not mean that there's an inadequate representation. In the Arakaki case, there are two presumptions set forward. One is that if you have the same ultimate objective as a party that's already in the case, there's a presumption of adequacy of representation. Here, there is exactly the same ultimate objective, that is, upholding the Secretary of Commerce's finding. And the second presumption set out in the Arakaki case is that if the government is a party, there is a presumption that their representation is going to be adequate. Now, there are exceptions, of course, where the government representation is found not to be adequate. Those exceptions typically come in two types of areas. One is the Watt v. Watt type of area, where the person who subsequently becomes the Secretary of Interior was essentially the person who brought the lawsuit against the government in the first place. That is clearly not the case here. We have the same administration. We have the same people vigorously opposing our lawsuit. The second area, and Your Honor will be familiar with this case, of course, as Judge Graber is with the Arakaki case, is this Southwest Center case. And that case is a lot more complicated than this case, not only because it was a different stage of the proceedings, but also because that case involved extremely complicated HCPs and NCCPs,  various pieces of the government, environmental groups. They covered a large number of issues. And in that kind of situation, where there might be compromises to be made and there might be tradeoffs, they were maybe more focused on the vernal pools and someone else might be more focused on something else, it might make sense to allow additional people with separate interests from the government in because the government might choose to trade off one way or the other. So here we have no such issues. There is one finding. There is one issue. It's a yes or no. The statute instructs the Secretary of Commerce to make a determination. He is instructed to answer the question yes or no. In this case, the Court has determined that the answer has to be no. And that's all there is. So this case is much more like the Arakaki case that – in which the government zealously represented the party's interests, and the government continued to do so. Roberts. Isn't there a difference, at least in theory, between a government department saying, we like this policy, we think it's reasonable, we've studied it carefully, we'd like to put it into final implementation, and someone who says the absence of this regulation is killing me economically? No, I don't think so. In other words, the difference between government agency coming to a decision and making a determination and someone whose livelihood is impacted by how that decision is made. There is a distinction in motivation, Your Honor, absolutely, and I wouldn't argue otherwise. But the case law makes clear that as long as the ultimate objective is the same, and as long as the incentives are aligned, there is no reason for intervention. I mean, there are a lot of cases, of course, where the government regulates areas and the government passes laws, and obviously they impact people disproportionately. And some laws essentially put businesses – you know, put entire industries out of business. But as long as the government continues to And the government continues to litigate vigorously on that side, as they have here and as they are continuing to do, the mere fact that someone is losing money does not mean that they are entitled to intervention when the government, which has, you know, the interest of upholding the law, is vigorously defending. So I would agree with Your Honor that there is a different reason to have the same ultimate objective, but the test is not whether people have different reasons. The test is whether the ultimate objective is the same. Would your client have any objection to these parties participating as amici? I think that, assuming that it came back to this panel, the panel seems interested in their views. I'm not – please don't take anything from it. I just asked a question. What would be your position if you were back in district court and they say, okay, we lost on intervention, we'd like to file amicus briefs at important stages of the proceedings? What would your client's position be? I think that it's likely, Your Honor, although I haven't spoken with my client on that particular question with respect to the future, that we would believe that the government is making, you know, all the arguments that need to be made. If or you don't even want them in as amici. Well, we don't, although I would have to admit, Your Honor, that if they presented an argument that was wholly different from an argument of the government, you know, those completely new, and the government didn't want to make that, I would have a hard time telling the court that they shouldn't listen to that argument. And so I probably would counsel my client to not oppose that request. If they were simply, you know, here's another 40-page brief in addition to the government's 40-page brief that makes essentially the same arguments, I would probably request that the court not consider that as being duplicitous. You know, sometimes amicus briefs can have a profound impact on courts. I think of the amicus briefs filed in the University of Michigan law school admissions policy case, which seemed to have had a profound impact on not only the justices, but the ultimate result. I completely agree with you, Your Honor. That was my law school, and my former firm worked on that case. So I'm very familiar with it. And I do think that in that case, there were a broad range of arguments that entities with different particular interests wanted to advance, and obviously that was a case of extreme national importance. And as I say, if the argument – if the government declined to make a reasonable argument that the associations wanted to present as an amicus to the merits panel, I think I certainly would counsel my client not to oppose it, and I think it would be unlikely that any opposition would succeed. But if, you know, private parties had simply mirrored in that case at Supreme Court what the parties had presented, I think the court wouldn't have been as focused on those briefs. I would just like to take a couple seconds on the protectable interest, even though I think that, you know, the adequacy of representation issue is sufficient, and that Judge Henderson's decision should be affirmed. In the cases that talk about the – that allow intervention and discuss the significantly protectable interest, the standard boils down in the most recent cases to a legally protectable interest, and the examples typically are contract rights. In the Southwest Center case, there were already approved agreements, for example, and there was a specific sale that was – or development that was being made. This case is more like the Portland Audubon case, where, I mean, it's true that the timber companies expected to make sales, and certainly, as a factual matter, they were harmed by the decision. But here there's a statutorily defined right to use a certain label, and they're affected, and their pocketbooks are affected by a statutory opportunity. So why isn't that a protectable interest? I don't want to go too far down this road, Your Honor, because I appreciate that the other argument probably is stronger on the adequacy of representation. But I think the difference, Your Honor, is that in those cases, there were specific sales that were lined up and had contracts or had permits, for example, in the Phoenix case, the Sierra Club case, with respect to the water rights. Here, there is a bare expectation, if you will, a strong expectation, of course, that sales would be made. I mean, the tuna market here is large, and I wouldn't deny that. And certainly, if their economic interests weren't likely to be impacted, they wouldn't have hired counsel and pursued this. But I think there is a difference between having an existing contractually protected right or an existing permit issued by the government and having an expectation that you would make sales. But as I say, I do want to keep my argument focused on the adequacy of representation, because we have fought the government long and hard. They are worthy and noble adversaries, and we think that they are adequately representing the interests of the associations. Okay. Thank you. Thank you for your argument. You have about half a minute for rebuttal, if you choose to use it, counsel. Thank you, Your Honor. Regarding the Southwest Center case, I think the complexity aspect of it also applies here. I also think that it's clear from that case that we have the same sort of economic stake in the case that is different than the government's stake. Regarding whether we would be adequately served by being an amicus, in fact, if we are not a party, for example, we have followed a protective appeal, so has the Commerce Department. If we are not a party and the Commerce Department decides we have spent enough money on this issue, it has been going on long enough, we are going to abandon our appeal, we are left out in the cold. So we need the court to resolve, do we have party status, not merely are we an amicus. And I see that. Is there any indication that the Department of Commerce is going to fold up its stamp? No, Your Honor. There's no indication. But I think it's certainly important to my clients that we have status as a party. That's why we're here. I think the panel is confident you're going to keep an eye on that. Thank you for your argument. Thank both sides for their argument. I appreciate you coming in today. It's a very interesting case, and it's now submitted for a decision. And we'll proceed to the last case on the calendar this morning, which is Scottsdale Insurance v. Harvey. If counsel will come forward, please. Thank you.
judges: Selna Hawkins, Graber